## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 31 2020, 10:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan M. Truitt
Truitt Law Office
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David E. Allen,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | January 31, 2020<br><br>Court of Appeals Case No.<br>19A-CR-986<br><br>Appeal from the LaPorte Superior Court<br><br>The Honorable Michael Bergerson, Judge<br><br>Trial Court Cause No.<br>46D01-1801-FA-112 |

**Crone, Judge.**

# Case Summary

[1] David E. Allen appeals his aggregate fifty-five-year sentence imposed by the trial court following his guilty plea to class A felony child molesting and level 4 felony child molesting. He argues that his sentence is inappropriate in light of the nature of the offense and his character. Finding that Allen has not met his burden of demonstrating that his sentence is inappropriate, we affirm.

# Facts and Procedural History

[2] M.A. is Allen's granddaughter. In October 2017, eight-year-old M.A. told her mother that every time she stayed overnight at Allen's house, he would sleep with her and place his hands on her "private area" through her clothes and rub her "pee pee." Appellant's App. Vol. 2 at 18 (probable cause affidavit).[1] M.A. told her mother that she cried "every time," but Allen told her "it's okay to cry." *Id.* Allen began molesting M.A. when she was seven years old and stopped around her eighth birthday in September 2017. Allen told M.A. that it was "their secret and not to tell anyone." *Id.* at 20. M.A. later learned at school that the touching was inappropriate. After M.A. reported the molestations, she had nightmares and trouble sleeping.

[3] M.A.'s mother notified relatives about the allegations and began receiving messages about other family members who may have been molested by Allen.

---

[1] Our recitation is based in part on the probable cause affidavit, which was attached to Allen's presentence investigation report to set forth the circumstances attending the commission of the charged offenses. Appellant's App. Vol. 2 at 49.

One relative, C.S.C., and another victim, S.K., came forward with allegations of sexual abuse by Allen.

[4] C.S.C. is Allen's stepgranddaughter. She told police that the first molestation happened the night after her mother and Allen's son got married in 2000. C.S.C., who was then six years old, was asleep on a couch in Allen's house. Allen began to rub her legs and back, then progressed to her vagina, which he rubbed under her clothes. C.S.C. stated that "it seemed every time she went there after that, he touched her." *Id.* at 20. Allen would "put his tongue on her vagina and insert his fingers into her vagina." *Id.* He would also approach her when she got out of the shower and make her "lay down on the bed and rub his testicles while he masturbated" and then he would "ejaculate on her stomach." *Id.* C.S.C. stated that over the years, Allen tried to get her to perform oral sex on him and even bought flavored condoms. She said that on one occasion, Allen made her watch as he forced a ten-year-old autistic relative to perform oral sex on him. Allen then remarked to C.S.C., "[S]ee, he likes it." *Id.* C.S.C. indicated that Allen would have her sit on him and put the "tip of his penis in her vagina." *Id.* She stated that Allen had intercourse with her in 2005 when she was eleven years old. *Id.* C.S.C. said that Allen would "give her money and buy her things, like a necklace." *Id.* C.S.C. never told anyone because she was "ashamed." *Id.*

[5] After hearing of the allegations, Allen attempted to commit suicide by overdosing on medications. While he was in the hospital, he admitted to his wife that he had molested M.A. and stated, "I don't know why I did it." *Id.* at

18. He also confessed to his pastor that he "must have done it." *Id.* at 19. After Allen's suicide attempt, one of Allen's sons told police that when he was around twelve years old, he was in Allen's house and found a drawer that contained pictures of his preteen cousin, who is now deceased, posing completely nude.

[6] The State charged Allen with eleven counts of class A felony child molesting and one count of level 4 felony child molesting involving M.A., C.S.C., S.K., and two other children.[2] Pursuant to a written plea agreement, Allen pled guilty to performing deviate sexual conduct on C.S.C., a class A felony, between September 2000 and June 2001, and fondling M.A., a level 4 felony, between September and November 2016. The State agreed to dismiss the remaining charges. The agreement left sentencing to the trial court's discretion except for a stipulation that the sentences run consecutively. During sentencing, the State read letters from family members which described how Allen's acts had hurt and devastated the family. The trial court found as mitigating factors Allen's lack of any significant criminal history, his low risk to reoffend, his guilty plea, and his poor physical and mental health. The trial court found as aggravating factors the scope and magnitude of Allen's conduct involving multiple victims over many years, his violation of trust, and his lack of remorse. The trial court sentenced the seventy-two-year-old Allen to an

---

[2] During a forensic interview, S.K. stated that Allen molested her from the time she was five years old until she was seven. She indicated that Allen forced her to touch his penis and had intercourse with her even though she cried and told him no. Allen told her not to tell anyone and would buy her gifts. Appellant's App. Vol. 2 at 21.

aggregate fifty-five year executed term and identified him as a credit restricted felon. This appeal ensued.

# Discussion and Decision[3]

Allen requests that we reduce his sentence pursuant to Indiana Appellate Rule 7(B), which provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we] find that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Sentence review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). Whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers[.]" *Id.* at 1225. "The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). Allen bears the burden of persuading us that his sentence is inappropriate. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).

---

[3] Indiana Appellate Rule 46(A)(7) states that an appellant's summary of argument "should contain a succinct, clear, and accurate statement of the arguments made in the body of the brief." Allen's two-page summary of argument is just as long as the argument itself.

[8]     Turning first to the nature of the offense, we observe that "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Allen was sentenced to forty-five years for the class A felony and ten years for the level 4 felony. The sentencing range for a class A felony is between twenty and fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4(a). The sentencing range for a level 4 felony is between two and twelve years, with a six-year advisory term. Ind. Code § 35-50-2-5.5. While Allen's sentence exceeds the advisory sentences for the crimes charged, it is seven years below the maximum allowable sentence. As part of Allen's plea agreement, he agreed to consecutive sentences.

[9]     When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011). Allen acknowledges that his offenses are "depraved" and "vile" and that he should be punished. Appellant's Br. at 7. However, Allen claims that the sentence is "excessive" and will basically have the effect of a life sentence. *Id.* Even if the trial court had sentenced Allen to the minimum of twenty years for the class A felony, Allen was designated a credit restricted felon and therefore would earn one day of good time credit for every six days served. Ind. Code § 35-50-6-3.1. And under the sentencing statutes in effect when Allen committed that crime,

the trial court was authorized to suspend only that part of the sentence above the minimum sentence. Ind. Code §35-50-2-2(b) (1999). Therefore, Allen would be required to serve a minimum of almost seventeen years executed for the class A felony alone.

[10] Our review of Allen's offenses indicates that he took advantage of his relationship with young, vulnerable children in order to fulfill his own despicable desires. Allen violated his position of trust with M.A. and C.S.C. Even though M.A. "cried out," Allen continued to molest her for almost a year. Likewise, he molested C.S.C. for almost eight years. We agree with the trial court's observation that Allen "used his family as a bre[e]ding ground for his uncontrollable deviancy." Tr. Vol. 2 at 55. We find that the nature of the offenses does not warrant a reduction in his sentence.

[11] Allen fares no better when we consider his character. Allen proclaims to be a "changed" man, and that he has "extreme remorse and shame." Appellant's Br. at 8. He also claims that he will be "extraordinarily vulnerable" in prison. *Id.* at 10. His self-serving argument is not well taken. Our review of the record indicates that he never apologized to his victims. In fact, during his sentencing hearing, he denied that he molested M.A. and C.S.C. as many times as they alleged, and stated, "I don't know where they're coming up with all this." Tr. Vol. 2 at 39. Allen also contends that his sentence is inappropriate because of his lack of significant criminal history. However, the record indicates that Allen was convicted three times of operating a vehicle while intoxicated. Throughout Allen's brief, he claims that his excessive drinking caused him to

not remember the molestations or specific acts.[4] This does not reflect favorably on his character. He also asserts that his "biography is not the worst of the worst justifying no chance at freedom." Appellant's Br. at 10. We disagree. Allen molested multiple victims, including family members, over many years. We agree with the trial court's observation that Allen does not seem to understand or appreciate the "incalculable misery that he has caused his victims." Appellant's App. Vol. 2 at 55.[5]

[12] We conclude that Allen has failed to carry his burden to show that his sentence is inappropriate based on the nature of the offenses and his character. Therefore, we affirm.

[13] Affirmed.

May, J., and Pyle, J., concur.

---

[4] Under Indiana Appellate Rule 7(B), our consideration of Allen's criminal history encompasses his criminal conduct and is not limited to his prior convictions.

[5] Allen also argues that the sentence is inappropriate in light of his poor physical and emotional health, but he does not explain how these relate to his character.