## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 21 2020, 6:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ronald J. Moore
The Moore Law Firm, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph D. Reed, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 21, 2020 <br><br> Court of Appeals Case No. 19A-CR-2187 <br><br> Appeal from the Wayne Superior Court <br><br> The Honorable Charles K. Todd, Jr., Judge <br><br> Trial Court Cause No. 89D01-1808-F5-62 |

**Kirsch, Judge.**

[1] Following his conviction for battery resulting in bodily injury to a public safety official[1] as a Level 5 felony with a habitual offender enhancement[2], Joseph D. Reed ("Reed") was sentenced by the trial court to eight and one-half years executed. Contending that his sentence is inappropriate in light of the nature of his offense and his character, Reed now appeals.

[2] We affirm.

## Facts and Procedural History

[3] On August 1, 2018, Wayne County Sheriff's Department Deputies Sonia Mitchell ("Deputy Mitchell") and Jeff Lamberson ("Deputy Lamberson") brought Reed to the Wayne County jail for processing on another charge. *Tr. Vol. II.* at 110, 118. During the book-in procedure, Reed informed officers at the Wayne County jail that he needed to use the restroom but was told he would first have to complete the book-in procedure before he could do so. *Id.* at 110; *Appellant's. App. Vol. 2* at 11. Reed instead "bolted" towards the restroom and Sergeant Christopher Toby ("Sergeant Toby") followed him into the restroom. *Tr. Vol. II* at 128, 138. Sergeant Toby grabbed Reed by the back of his jumpsuit in an attempt to bring him back to the book-in counter when Reed turned around and struck Sergeant Toby in the face and head with closed fists about "eight or ten" times. *Id.* at 138. Deputy Lamberson and Deputy Mitchell

---

[1] *See* Ind. Code § 35-42-2-1.

[2] *See* Ind. Code § 35-50-2-8.

assisted Sergeant Toby and were able to subdue Reed by tasing him, and Reed was eventually placed in handcuffs and taken into custody. *Id.* at 123, 139. As a result of the altercation, "the top of [Sergeant Toby's] left ear was cut open[,]" and Sergeant Toby "had some scrapes on [his] arms" and the "sides of [his] head were throbbing." *Id.* at 139.

[4] On August 2, 2018, the State charged Reed with battery resulting in bodily injury to a public safety official as a Level 5 felony and also alleged that he was a habitual offender. *Appellant's App. Vol. 2* at 13, 14. On August 6, 2019, the trial court commenced a jury trial. *Id.* at 7.

[5] At the conclusion of the trial, the jury found Reed guilty of battery resulting in bodily injury to a public safety official as a level 5 felony, and Reed admitted to being a habitual offender. *Id.* at 203, 207-219. On September 6, 2019, a sentencing hearing was held at which the trial court considered the presentence investigation report, which showed that Reed's criminal history included sixteen cases as an adult and two juvenile delinquency petitions. *Appellant's Conf. App. Vol. 2.* at 7, 98-102. The trial court also heard testimony from Reed's mother, Kelly Gentry ("Gentry"), regarding his history of mental illness. *Tr. Vol. III* at 8-20. Gentry testified that Reed had suffered from rapid cycling bipolar one disorder since he was eight years of age, which caused cycles that "just keep coming and they're hard for [Reed] to handle" and that she believed he had not taken his medication since "[m]aybe 2016." *Id.* at 10-11. Gentry also stated that if Reed was receiving the appropriate medication for his conditions that he would be "less likely to be put in this situation again or prior

situations," and she expressed her belief that if Reed was taking his medication he would not have attacked Sergeant Toby. *Id.* at 13. However, she also acknowledged that throughout his life Reed was hostile towards his teachers and other individuals in authority, threatened law enforcement, teachers, administrators, and other adults, and had exhibited violent tendencies since he was young. *Id.* at 17. With respect to counseling for his mental health and substance abuse issues, Gentry indicated that Reed had not followed the advice of counseling providers. *Id.* at 19.

[6] At sentencing, the trial court stated "what clearly is significant, and you could even underline the word significant, is the person has a history of criminal or delinquent behavior," noting that when Reed was "given opportunities at suspended sentences, he's been revoked on four different occasions," and found Reed's criminal history and previous record of probation violations as aggravators. *Id.* at 36, 38. The court also found as an aggravator that Reed committed the offense while he had pending criminal charges for battery by bodily waste on a public safety official and a habitual offender allegation at the time of the instant offense. *Id.* at 39; *Appellant's Conf. App. Vol. 2* at 101. The trial court found as a mitigator Reed's admission to being a habitual offender, and gave "slight mitigation" to Reed's history of mental illness. *Tr. Vol. III.* at 40-41. The trial court sentenced Reed to five years for his Level 5 felony conviction for battery resulting in bodily injury to a public safety official with an additional three and one-half years for Reed's adjudication as a habitual

offender for an aggregate sentence of eight and one-half years executed.
*Appellant's App. Vol. 2* at 120. Reed now appeals.

# Discussion and Decision

[7] Reed argues that his sentence is inappropriate. Pursuant to Indiana Appellate Rule 7(B), this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the [c]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of Reed's offense and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. Reed bears the burden of persuading us that his sentence is inappropriate. *Id.*

[8]     Reed argues that his mental health issues make his sentence inappropriate and that those issues warrant a reduction of his sentence to a five-year aggregate sentence comprised of three years for his Level 5 felony conviction with all three years suspended and two years on the habitual offender adjudication. *Appellant's Br.* at 16-17.[3]

[9]     "As to the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). Here, Reed was convicted of Level 5 felony battery resulting in bodily injury to a public safety official with an enhancement for his adjudication as a habitual offender. The advisory sentence for a Level 5 felony is three years with a range of one to six years. Ind. Code § 35-50-2-6. For the adjudication as a habitual offender, the court may enhance the sentence on the underlying offense by an additional nonsuspendible term of between two years and six years. Ind. Code § 35-50-2-8(i). Therefore, the maximum sentence Reed could have received from the trial court is twelve years. The trial court imposed a sentence of five years for Reed's Level 5 felony and a sentence of three and one-half years for the habitual offender adjudication for an aggregate sentence of eight and one-half years

---

[3] Some of Reed's arguments seem to contend that the trial court did not assign sufficient weight to his history of mental illness as a mitigating factor or somehow abused its discretion in sentencing him. We note that Reed did not frame his argument in this way or provide any cogent argument regarding the trial court abusing its discretion and has not cited to any authority for such an argument. Therefore, to the extent that he is arguing that the trial court abused its discretion in sentencing him, we conclude that he has waived any such argument. *Lee v. State*, 91 N.E.3d 978, 990-91 (Ind. Ct. App. 2017) (citing Ind. Appellate Rule 46(A)(8)(a)).

executed. Reed's aggregate, executed sentence was three and one-half years less than the trial court was authorized to impose.

[10] As this court has recognized, the nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). The nature of the offense refers to a defendant's actions in comparison with the elements of the offense. *Cardwell*, 895 N.E.2d at 1224. "When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that 'makes it different from the typical offense accounted for by the legislature when it set the advisory sentence.'" *Moyer v. State*, 83 N.E.3d 136, 142 (Ind. Ct. App. 2017) (quoting *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011)), *trans. denied*.

[11] With respect to the nature of the offense, Reed struck Sergeant Toby with closed fists "eight or ten times" in the face and head, causing a cut to the top of Sergeant Toby's left ear, some scrapes on his arms, and a throbbing pain on the sides of his head. *Tr. Vol. II* at 138-39. The efforts of multiple officers and the use of a taser were required to restrain and subdue Reed and complete the book-in procedure. *Id.* at 123, 139. In addition, at the time Reed committed the instant offense he had also been charged with battery by bodily waste on a public safety official and his actions were a violation of his probation in another case from Franklin County that involved theft. *Appellant's. Conf. App. Vol. 2.* at

101. We do not find his sentence to be inappropriate in light of the nature of the offense.

[12] The character of the offender is found in what we learn of the offender's life and conduct. *Perry*, 78 N.E.3d at 13. When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). Reed, who at the time of sentencing was twenty-nine years of age, had compiled an extensive criminal history, which beginning in 2007 included a total of sixteen cases with each resulting in a conviction. *Appellant's Conf. App.* at 98-101. Of his sixteen criminal cases, Reed had his probation revoked on four separate occasions, and violated his probation in his Franklin County theft case by committing the offense in this case. *Id.* His felony history includes convictions for burglary, escape, theft, attempted theft, criminal trespass, possession of cocaine, maintaining a common nuisance, and battery by bodily waste on a public safety official. *Id*. His misdemeanor history includes convictions for leaving the scene of an accident, criminal trespass, theft, false informing, conversion, and operating a motor vehicle without a license. *Id*. Reed's two most recent convictions both involved battery on a public safety official. *Id.* at 101. Moreover, the trial court heard testimony that Reed's criminal history was sufficiently extensive that in his adulthood he had not been out of the criminal justice system long enough to maintain consistent employment. *Tr. Vol. III* at 18. Regarding Reed's assertion that his history of mental illness informs our assessment of his character and warrants a downward reduction of his sentence, we note that the trial court

heard testimony from Reed's mother regarding his diagnosis of rapid cycling bipolar one disorder, the impact of medication to control the symptoms of the disorder and the effect of medication on Reed's behavior, and the difficulties the diagnosis has caused for Reed. *Id.* at 10-17. However, the record shows that Reed consistently engaged in criminal activity, including four violations of probation, and that previous attempts at counseling or a suspended sentence had been unsuccessful. *Appellant's Conf. App. Vol. 2* at 98-102; *Tr. Vol. III* at 18-19. Moreover, the trial court expressly acknowledged Reed's history of mental illness and its impact on his behavior in imposing his sentence. *Id.* at 41. We cannot say that Reed's history of mental illness merits a downward reduction of his sentence and conclude that Reed's sentence is not inappropriate in light of his character.

[13] Reed has not shown that his sentence is inappropriate in light of the nature of his offense and character. We, therefore, affirm the sentence imposed by the trial court.

Najam, J., and Brown, J., concur.